**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NAKED JUICE CO. OF GLENDORA, INC.,<br><br>        Plaintiff,<br><br>        v.<br><br>NAKED WHEY, INC. d/b/a NAKED NUTRITION,<br><br>        Defendant. | CIVIL ACTION NO. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Naked Juice Co. of Glendora, Inc. ("Plaintiff"), by its attorneys, Loeb & Loeb LLP, allege the following in support of its claims and causes of action against defendant Naked Whey, Inc. d/b/a Naked Nutrition ("Defendant").

## NATURE OF THE ACTION

1.      This action is a case of classic intentional trademark infringement.

2.      Plaintiff began offering its smoothies and fruit juices under the NAKED mark to the American public in 1984. In the decades since, Plaintiff's product line has expanded to include fruit-flavored and coconut water, and its products have become famous, distributed nation-wide in most major food retailers and many convenience stores.

3.      Plaintiff's products are known for being nutritious and free from preservatives and added sugar. As a result of Plaintiff's investment in its quality products, it has generated

considerable goodwill in the NAKED mark, which consumers have come to associate with Plaintiff and its products.

4. In 2025, Defendant, a vitamin and supplement company that had operated for a decade as "Naked Whey" or "Naked Nutrition", began offering a ready-to-drink "Sparkling Energy" beverage which drastically departed from their usual product line. Conspicuously absent from Defendant's packaging for its fruit flavored energy drink is any indication that the beverage derives from Defendant. Instead, the packaging prominently displays the NAKED mark in isolation and touts benefits similar to those emphasized by Plaintiff in connection with the products that it has offered under its NAKED mark for decades.

5. Because Defendant has begun offering a fruit-based, ready-to-drink beverage under the NAKED mark, consumers are likely to be confused and assume that the "Sparkling Energy" drink comes from Plaintiff. Moreover, Defendant's packaging and advertising seems to be intentionally designed to profit from such confusion.

6. Defendant has refused to cease its clearly willfully infringing conduct, forcing Plaintiff to commence this action to protect its valuable intellectual property.

## THE PARTIES, JURISDICTION AND VENUE

7. Plaintiff Naked Juice Co. of Glendora, Inc. is a California corporation with its principal place of business at 525 W. Van Buren Street, 11th Floor, Chicago, IL 60607.

8. Defendant Naked Whey, Inc. is a Florida corporation with its principal place of business at 382 NE 191st St #50062; Miami, FL 33179.

9. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

10.     This Court has personal jurisdiction over Defendant because it advertises and sells its infringing products to customers in this District through their website at <nakednutrition.com> and through other national platforms such as Amazon.

11.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and Defendant is subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL BACKGROUND

### I.     Plaintiff's Famous Beverage Offerings

12.     Plaintiff began selling its juices, smoothies and flavored waters under the NAKED mark in California in 1984.  The NAKED mark was selected to imply the simplicity of Plaintiff's products: fresh beverages without artificial flavors, added sugars or preservatives.

13.     In the decades since, Plaintiff has invested substantial time and resources into developing consumer recognition and goodwill in the NAKED mark.  Consumers have come to associate the mark with healthful juice and vegetable blends that deliver both flavor and nutritional benefits and, when it comes to beverages, associate the mark solely with Plaintiff.

14.     Plaintiffs' efforts have been very successful, and Plaintiff's business has expanded globally, first as part of the Global PepsiCo portfolio, and now as part of the Tropicana Brands Group.  Not only are Plaintiff's goods offered in all 50 states, but they are also available internationally.

15.     In the U.S., Plaintiff's juices, coconut waters and smoothies have become a popular beverage choice, available at many major retailers including Wal-Mart, Target, Whole Foods, Costco and many other major grocery chains and convenience stores.  Plaintiff's products are also

available on Amazon.com. Indeed, Plaintiff generates approximately $500 million in sales each year in the United States.

16. In connection with its business, Plaintiff is the owner of several trademarks registered with the United States Patent and Trademark Office (the "NAKED Beverage Marks") in International Class 32 which covers non-alcoholic drinks, waters and specialty drinks, including smoothies and energy drinks. The NAKED Beverage Marks include:

| Mark | U.S. Reg. No. | Goods Description | Date of First Use |
|---|---|---|---|
| NAKED | 2,280,433 | "blended fruit juice; fresh squeezed fruit and vegetable juices; fruit nectar" | 5/1984 |
| | 4,723,936 | "Fruit and vegetable juices, juice drinks and fruit flavored waters" | 10/1/2005 |
| | 3,316,179 | "Fruit and vegetable juices, juice drinks and fruit flavored waters" | 10/1/2005 |
| NAKED | 3,836,207 | "Coconut juice and coconut water" | 1/31/2010 |

17. Each of the above marks have obtained incontestable status, which serves as conclusive evidence of the validity of the NAKED Beverage Marks and Plaintiff's exclusive right to use The NAKED mark in commerce for those products.

18. Currently, Plaintiff offers four different product lines under the NAKED Beverage Marks:

- "Machines" which are Plaintiff's "boosted smoothies" consisting of various fruit juices fortified with fiber and essential vitamins and minerals;

- Protein smoothies containing 20 grams of plant-based protein;

- Fiber smoothies containing 9 grams of fiber; and

4

- Coconut water.

19. Keeping in line with the original intention of the NAKED Beverage Marks, Plaintiff states prominently on each product's packaging that it contains "no added sugar" and that its products are vegan and free from artificial preservatives.

20. In further keeping with its product ethos, for a period of time, Plaintiff promoted its NAKED offerings with the tagline "Stripped Down to Naked".

21. Plaintiff regularly promotes its products as providing its consumers with energy and nutritional benefits. For example, on its website, Plaintiff encourages consumers to "boost" with their smoothies, "power up" with its protein offerings, and promotes its beverages as a good choice for when you "need an extra 'oomph' to get you through the day." It states that its "Machine" offerings can "replenish & recharge" while its protein options "satisfy & refuel." Because of this, consumers not only recognize the NAKED Beverage Marks but have come to associate those marks with energy-enhancing offerings.

## II. Defendant's Infringing NAKED Beverage

22. Defendant Naked Whey is a supplement company which operates under the name "Naked Nutrition". Though it is known primarily for its protein powder, which it markets under the Naked Whey name, it offers numerous powdered products including creatine, BCAA and collagen. It also sells more traditional vitamins in pill form.

23. Defendant was founded in 2014 and for roughly ten years, remained within its distinct supplement field. However, in or around July 2025, Defendant released its first ready-to-drink "Sparkling Energy", beverage under the NAKED brand which Defendant offers in three fruit flavors, orange, lemonade and strawberry lemonade (the "Infringing Product").

24.     The Infringing Product contains 6 ingredients, the first of which is water, the second of which is Defendant's "Naked Energy" blend which has lemon juice as its primary ingredient. In other words, the Infringing Product, is essentially a fruit-flavored water, the exact product offered by Plaintiff and for which several NAKED Beverage Marks are registered.

25.     Critically, Defendant's packaging for the Infringing Product is misleading. Whereas Defendant's packaging typically includes "Naked" next to and in the same font size as the name of the particular non-beverage product contained therein, in the case of the Infringing Product, "Naked" is prominently featured in isolation, while the "Sparkling Energy" product name is deemphasized, listed in much smaller font at the bottom of the can:

**Defendant's Standard Packaging**          **Infringing Product**

   

The Infringing Product packaging does not clearly indicate that it is manufactured or distributed by Naked Whey or Naked Nutrition.

26.     Moreover, much of Defendant's advertising for the Infringing Product depicts its product near fresh fruit, emphasizing that its product contains fruit juice (*see* paragraph 25, infra).

27.     Like Plaintiff, Defendant markets the drink as providing consumers with energy, using the same terminology as Plaintiff: "Drink Naked Sparkling Energy when you need a pre-workout *boost*, mid-afternoon pick-me-up, or help staying sharp and focused…" (emphasis added).

28.     Much like Plaintiff does for its products, Defendant promotes the Infringing Product as being "stripped down from unnecessary additives to give you pure, unaltered energy", with no artificial sweeteners and notes that its product is vegan. Moreover, Defendant's use of "stripped down" mirrors Plaintiff's "stripped down to NAKED" tagline.

29.     Given the use of the NAKED mark, the similar attributes emphasized in marketing, consumers are likely to be confused and presume that Plaintiff is the source for Defendant's Infringing Product or that it is being marketed under the approval or control of Plaintiff.

30.     In addition, Defendant released the Infringing Product in a similar time period to Plaintiff's launch of a rebranding effort that included a change in its product line-up and new labeling. Accordingly, consumers familiar with Plaintiff's products would be all the more likely to overlook any perceived differences between Plaintiff's products and the Infringing Product.

31.     Further cementing confusion, when a consumer searches for "Naked drinks" on Amazon, Defendant's Infringing Product is displayed high in the results, amongst Plaintiff's products, likely leading consumers to presume Plaintiff's and Defendant's products are derived from the same source:



32. Notably, in the lead up to the release of the Infringing Product, Defendant submitted a trademark application for STRIPPED DOWN TO POWER UP, Serial No. 99/105,659, seeking registration in International Class 032 for "Energy drinks" among other categories. Defendant did not attempt to attain registration for NAKED or NAKED SPARKLING ENERGY in that category, presumably in recognition of any attempt to obtain such a registration would be rejected as an infringement of Plaintiff's NAKED Beverage Marks in that beverage class.

### III. Defendant's Reject Plaintiff's Cease and Desist

33. Shortly after Defendant's release of the Infringing Product, counsel for Plaintiff wrote to Defendant demanding that Defendant cease all use of NAKED, NAKED SPARKLING ENERGY or any other NAKED-formative mark in connection with their energy drink or any other ready-to-drink offering.

34. Defendant did not comply with Plaintiff's demands, forcing Plaintiff to commence this lawsuit to protect its rights in the valuable NAKED Beverage Marks.

**FIRST CLAIM FOR RELIEF**
**(Trademark Infringement pursuant to 15 U.S.C. § 1114)**

35. Plaintiff refers to and realleges each and every allegation in paragraphs 1 through 34 above as if fully set forth herein.

36. Plaintiff is the owner of valid trademark registrations in the NAKED Beverage Marks, many of which are incontestable, and has continuously used them throughout the United States.

37. Defendant is advertising and selling a water-based beverage containing organic fruit juice under the NAKED Beverage Marks.

38. Defendant's use of the NAKED Beverage Marks on the Infringing Product is likely to cause consumer confusion, mistake, and deception regarding the origin, sponsorship or

affiliation of the Infringing Product and constitutes trademark infringement pursuant to 15 U.S.C. § 1114.

39.     Defendant's conduct has caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Plaintiff for which it has no adequate remedy at law, entitling Plaintiff to injunctive relief pursuant to 15 U.S.C. § 1116, which includes, without limitation, an order directing Defendant cease all use of the NAKED mark on products and in advertising and destroy all existing inventory bearing the same.

40.     Plaintiff has been and will likely continue to be damaged by Defendant's conduct in an amount to be determined at trial.  Defendant's intentional, deliberate, and willful use of the NAKED Beverage Marks, with knowledge of Plaintiff's rights in the NAKED Beverage Marks, renders this case exceptional, entitling Plaintiff to an enhanced award of damages as well as reasonable attorneys' fees and costs incurred in connection with this action pursuant to 15 U.S.C. § 1117(a).

## SECOND CLAIM FOR RELIEF
### (False Association pursuant to 15 U.S.C. § 1125(a)(1)(A))

41.     Plaintiff refers to and realleges each and every allegation in paragraphs 1 through 40 above as if fully set forth herein.

42.     Plaintiff has a protectable interest in the NAKED Beverage Marks which it has used in interstate commerce over the course of decades.

43.     Defendant is advertising and selling a water-based beverage containing organic fruit juice under the NAKED Beverage Marks.

44.     Defendant's use of the NAKED Beverage Marks on the Infringing Product is likely to cause confusion, mistake, and deception regarding an affiliation, connection, or association of Defendant with Plaintiff as well as to the origin, sponsorship or approval of the Infringing Product.

45. Defendant's conduct has caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Plaintiff for which it has no adequate remedy at law, entitling Plaintiff to injunctive relief pursuant to 15 U.S.C. § 1116, which includes, without limitation, an order directing Defendant cease all use of the NAKED Beverage Marks on products and in advertising and destroy all existing inventory bearing the same.

46. Plaintiff has been and will likely continue to be damaged by Defendant's conduct in an amount to be determined at trial. Defendant's intentional, deliberate, and willful use of the NAKED Beverage Marks, with knowledge of Plaintiff's rights in the NAKED Beverage Marks, renders this case exceptional, entitling Plaintiff to an enhanced award of damages as well as reasonable attorneys' fees and costs incurred in connection with this action pursuant to 15 U.S.C. § 1117(a).

## THIRD CLAIM FOR RELIEF
### (Trademark Dilution pursuant to 15 U.S.C. § 1125(c))

47. Plaintiff refers to and realleges each and every allegation in paragraphs 1 through 46 above as if fully set forth herein.

48. The NAKED Beverage Marks are famous because the marks are widely recognized by the general consuming public as indicating products from Plaintiff.

49. Defendant began using the NAKED Beverage Marks in a commercial manner by offering the Infringing Product, upon information and belief, with the intent to trade on the recognition of the NAKED Beverage Marks.

50. Defendant began offering the Infringing Product after the NAKED Beverage Marks had become famous.

51. Defendant's use of the NAKED Beverage Marks is likely to cause dilution of the NAKED Beverage Marks by blurring.

52.     Defendant's conduct has caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Plaintiff for which it has no adequate remedy at law, entitling Plaintiff to injunctive relief pursuant to 15 U.S.C. § 1116, which includes, without limitation, an order directing Defendant cease all use of the NAKED Beverage Marks on products and in advertising and destroy all existing inventory bearing the same.

53.     Plaintiff has been and will likely continue to be damaged by Defendant's conduct in an amount to be determined at trial.  Defendant's intentional, deliberate, and willful use of the NAKED Beverage Marks, with knowledge of Plaintiff's rights in the NAKED Beverage Marks, renders this case exceptional, entitling Plaintiff to an enhanced award of damages as well as reasonable attorneys' fees and costs incurred in connection with this action pursuant to 15 U.S.C. § 1117(a).

## FOURTH CLAIM FOR RELIEF
### (Violation of Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 *et. seq.*)

54.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 53 as though fully set forth herein.

55.     Defendant has deployed a deceptive trade practice by offering the Infringing Product under the NAKED Beverage Marks, causing a likelihood of confusion or misunderstanding as to the source of the Infringing Product.

56.     Defendant's conduct is also likely to cause confusion or misunderstanding as to an affiliation, connection, or association with Plaintiff.

57.     The foregoing acts of Defendants constitute unfair trade practices in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2 *et. seq.*

58.     By reason of the foregoing acts, Defendants have caused, and unless enjoined will continue to cause, irreparable harm to Plaintiff for which it has no adequate remedy at law.

11

59.     Plaintiff has been and will likely continue to be damaged by Defendant's deceptive trade practices in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
**(Violation of Illinois Consumer Fraud and Deceptive Practices Act,
815 ILCS 505/2 *et. seq.*)**

60.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 59 as though fully set forth herein.

61.     Defendant has engaged in the foregoing unfair and deceptive acts and practices, in commerce, with the intent to cause the public to rely on, and with the effect that the consuming public has relied on, Defendant's false and misleading misrepresentations.

62.     Defendant's false, deceptive, and misleading use of the NAKED Beverage Marks have deceived and are likely to deceive consumers.

63.     Defendant's foregoing acts constitute deceptive trade practices in violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 *et. seq.*

64.     Defendants' conduct is willful, deliberate, intentional, and in bad faith.

65.     Plaintiff has been and will likely continue to be damaged by Defendant's deceptive trade practices in an amount to be determined at trial.

66.     By reason of the foregoing acts, Defendant has caused, and unless enjoined will continue to cause, irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
**(Common Law Trademark Infringement)**

67.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 66 as though fully set forth herein.

68.     Plaintiff is the owner of valid trademark registrations in the NAKED Beverage Marks and has continuously used them throughout the United States, long before Defendant began offering the Infringing Product for sale under the NAKED Beverage Marks.

69.     Defendant's use of the NAKED Beverage Marks on the Infringing Product is likely to cause consumer confusion, mistake, and deception regarding the origin, sponsorship or affiliation of the Infringing Product and constitutes trademark infringement under the common law of the state of Illinois.

70.     Defendant's conduct has caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Plaintiff for which it has no adequate remedy at law.

71.     Plaintiff has been and will likely continue to be damaged by Defendant's conduct in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
### (Common Law Unfair Competition)

72.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 71 as though fully set forth herein.

73.     Defendant's acts as alleged constitute unfair competition under the common law of the state of Illinois.  Defendant's false and deceptive are likely to confuse and deceive the public and already have confused and misled the public.

74.     Defendant's conduct is willful, deliberate, intentional, and in bad faith.

75.     Plaintiff has been and will likely continue to be damaged by Defendant's false, deceptive, and misleading representations in an amount to be determined at trial.

76.     By reason of the foregoing acts, Defendant has caused, and unless enjoined will continue to cause, irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law.

77.     Plaintiff has been and will likely continue to be damaged by Defendant's conduct in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

a)      Preliminarily and permanently enjoin Defendant, and its officers, agents, employees, attorneys, and all others in active concert or participation with it, from directly or indirectly using the NAKED Beverage Marks or any confusingly similar mark in commerce.

b)      Require Defendants to:

(i)     account for and pay over to Plaintiff all profits wrongfully derived by Defendant from its use of the NAKED Beverage Marks and that such damages be trebled in accordance with 15 U.S.C. § 1117;

ii)     pay to Plaintiff such damages as have been suffered by Plaintiff and that such damages be trebled in accordance with 15 U.S.C. § 1117;

iii)    pay to Plaintiff the costs of this action, together with Plaintiff's reasonable attorneys' fees and disbursements in accordance with 15 U.S.C. § 1117 and 815 ILCS 505/10a(c);

iv)     pay to Plaintiff the damages to which it is entitled pursuant to common law; and

v)      file with this Court and serve on Plaintiff a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the terms of any injunction entered by the Court, in accordance with 15 U.S.C. § 1116.

d)      Grant Plaintiff such other and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Under Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues triable of right by a jury.

Dated: April 3, 2026

Respectfully submitted,

LOEB & LOEB LLP

By:    */s/ Douglas N. Masters*
        Douglas N. Masters
        Elisabeth K. O'Neill
        321 North Clark Street, Suite 2300
        Chicago, Illinois 60610
        Telephone:  (312) 464-3100
        Fax:  (312) 464-3111
        dmasters@loeb.com
        eoneill@loeb.com

        Sarah Levitan Perry
        (*pro hac vice* application forthcoming)
        345 Park Avenue
        New York, New York 10154
        Telephone: (212) 407-4000
        Fax: (212) 407-4990
        sperry@loeb.com

        *Attorneys for Plaintiff*
        *Naked Juice Co. of Glendora, Inc.*